UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE № 25-20068-CR-JB

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.

MANUEL POCEIRO,

    *Defendant*.

_____/

## **MANUEL POCEIRO'S SENTENCING MEMORANDUM**

**MANUEL POCEIRO** (hereafter "**MR. POCEIRO**"), by and through undersigned counsel, respectfully submits this Sentencing Memorandum pursuant to 18 U.S.C. § 3553(a), and the dictates of *United States v. Booker*, 543 U.S. 220 (2005) and its progeny. In support thereof, **MR. POCEIRO** submits the following:

### I.
### INTRODUCTION

Based upon a total offense level of forty-three (43) and a criminal history category of II, the Presentence Investigation Report (hereafter "PSR") calculates **MR. POCEIRO'S** advisory guideline range at life imprisonment. In addition to his advisory guideline range, **MR. POCEIRO'S** convictions carry substantial mandatory minimum penalties, including a ten (10) year mandatory minimum, pursuant to 18 U.S.C. § 2422(b), and a fifteen (15) year mandatory minimum pursuant to 18 U.S.C. § 2251(e).

The instant filing is not intended to excuse, minimize, or defend **MR. POCEIRO'S** conduct in the instant case. Nor does it seek to diminish the seriousness of the offenses or the harm caused. Instead, the purpose of this filing is to present the Court with a

complete and balanced assessment of the factors required under 18 U.S.C. § 3553(a), including **MR. POCEIRO'S** genuine remorse and acceptance of responsibility, the existence of significant sentencing disparities among similarly situated defendants, and **MR. POCEIRO'S** serious and deteriorating health conditions.

For the reasons outlined below, a sentence of life imprisonment is greater than necessary to accomplish the sentencing goals outlined in 18 U.S.C. § 3553(a). We respectfully submit that a sentence of fifteen (15) years, the highest applicable statutory mandatory minimum, is "sufficient but not greater than necessary" to serve the purposes of 18 U.S.C. § 3553(a).

## II.
## EXTRAORDINARY ACCEPTANCE OF RESPONSIBILITY

**MR. POCEIRO** fully acknowledges the harm caused by his conduct. He does not seek to shift blame, deny responsibility, or rationalize his actions. For that very reason, he chose to plead guilty and avoid inflicting any further harm associated with a trial to his victims. Although **MR. POCEIRO** initially attempted, wrongly, to contextualize or normalize aspects of his conduct based on cultural differences in Colombia, he has since recognized that such thinking was deeply flawed and indefensible.

Beyond his decision to plead guilty, **MR. POCEIRO** also attempted to cooperate with the government on unrelated matters shortly after his arrest. Although the first prosecutor assigned to this case was receptive to such an overture, said efforts were subsequently rejected by the government. Nevertheless, his willingness to cooperate illustrates his sincere remorse and desire to assist the government in the prosecution of others. Taken together, **MR. POCEIRO'S** conduct reflects an extraordinary acceptance of responsibility

that warrants meaningful consideration under § 3553(a).

### III.
### SENTENCING DISPARITIES

As outlined in the PSR, **MR. POCEIRO** received enhancements for several specific offense characteristics, including enhancements for "pseudo counts" identified as group two (2) and group three (3) in the PSR. These groups are based upon conduct that was neither charged nor admitted by **MR. POCEIRO'S** guilty plea. The resulting Guidelines calculation, life imprisonment, stands in stark contrast to sentences imposed in numerous federal cases involving similar or more egregious conduct. These disparities are particularly pronounced where courts declined to apply pseudo-count enhancements or otherwise exercised discretion to avoid guideline outcomes untethered from proportionality or fairness.

For example, a former Tampa attorney was charged with engaging in illicit sexual conduct in a foreign place and possession of child pornography after traveling to Cambodia for the purpose of engaging in sexual activity with eleven (11) and fourteen (14) year old girls. *United States v. Rugh Cline*, Case No. 21-cr-81-CEH-JSS (M.D. Fla. 2021). During his travels, he also took explicit photographs of his victims. *Cline*, Government Sentencing Memorandum [ECF № 162]. Although there was an independent basis to increase the defendant's guidelines with "pseudo counts" due to the defendant's admissions in his factual basis, the court struck the "pseudo counts" from the defendant's guidelines, reducing his guidelines to 97 – 121 months. *Cline*, Transcript of Sentencing Hearing [ECF № 183]. The court sentenced the defendant to 108 months imprisonment. *Id.*

Similarly, a former North Dakota State Senator was charged with traveling with intent to engage in illicit sexual activity and receipt of child pornography. *United States v. Raymon Holmberg*, Case No. 23-cr-206 (D.N.D. 2023). The defendant traveled to Prague, Slovakia, and Czech Republic to engage in commercial sex with boys as young as twelve (12) years old. *Holmberg*, Government Sentencing Memorandum [ECF № 60]. He likewise routinely bragged to his close friends regarding his sexual exploitation of the boys via written correspondence. *Id.* The Government noted "it is impossible to know how many boys [the defendant] victimized in Prague and elsewhere because law enforcement was not able to identify them, in part, because his visits spanned more than a decade and they were homeless runaway who often lives in poverty." *Id.* As for the child pornography charge, the defendant also manipulated a sixteen (16) year old boy to produce sexually explicit material. *Id.* Similarly, in his capacity as a high school guidance counselor, the defendant groomed and sexually exploited a high school student and later filmed him engaging in sexual conduct. *Id.* Despite engaging in similar conduct as **MR. POCEIRO** and qualifying for the same enhancements applicable in the instant case, the defendant's guidelines range was thirty-seven (37) to forty-six (46) months, and the government requested a sentence within the guidelines range. *Id.* Ultimately, the defendant was sentenced to 120 months, a far cry from **MR. POCEIRO'S** advisory guidelines of life. *Holmberg*, Judgment [ECF № 69]

In *Correa, infra*, the defendant was charged with attempted sex trafficking of a minor, attempted travel to engage in illicit sexual conduct, and production of material involving the sexual exploitation of minors in the Southern District of Florida. *United States v. Stefan Correa*, Case No. 24-cr-20186-BLOOM (S.D. Fla. 2024). Over the course of two

(2) years, he traveled to Colombia and **engaged in sexual relations with over fifty (50) girls ages nine (9) to seventeen (17)**. *Correa*, Government Sentencing Memorandum [ECF № 67]. The defendant's devices revealed over one hundred (100) videos that the defendant had recorded of the sex acts, and that the minors were not aware that they were being filmed. *Id.* Despite engaging in quantifiably more sex acts than MR. POCEIRO, and victimizing significantly more, and younger girls than MR. POCEIRO, his guidelines were life, and he was sentenced to life. *Correa*, Government Sentencing Memorandum and Judgment [ECF № 67 and 78].

In *United States v. Bianchi*, the defendant was convicted at trial of one (1) count of conspiracy to engage in illicit sexual conduct in foreign places, four (4) counts of traveling with the intent to engage in illicit sexual conduct, three (3) counts of engaging in illicit sexual conduct in foreign places, and two (2) counts of using a facility in foreign commerce to entice a minor to engage in sexual activity. *United States v. Bianchi*, 386 F.App'x. 156, 159 (3d Cir. 2010). He "repeatedly traveled around the world to meet and engage in sexual conduct with young boys" "between the ages of twelve and fifteen." *Id.* at 157. He also engaged in conduct amounting to obstruction of justice in order to dissuade the minor victims from traveling to the United States to testify at his trial. *Id.* at 158; *Bianchi*, Case No. 06-cr-19 (E.D. Pa. 2006) Defendant's Sentencing Memorandum and Objections to Pre-Sentence Investigation Report [ECF № 280]. The government detailed that the defendant raped a minor after the minor had passed out, lured a minor with the promise of a soccer ball prior to raping him, and threatened to kill the Mayor of a village in Moldova for interfering with his attempts to pay and gift parents in exchange for access to their underage sons. *Bianchi*, Government's Response to Defendant's

Objections to Presentence Report and Government's Response to Defendant Motion Under 28 U.S.C. § 2255 [ECF № 282 and 315]. Probation recommended enhancements for use of an intoxicant, use of force, and physical restraint of a victim, resulting in guidelines of life. *Id.* The defendant was ultimately sentenced to three hundred (300) months imprisonment.

Standing in stark contrast to *Correa* and *Bianchi*, **MR. POCEIRO'S** conduct was limited to a relatively small number of victims who engaged in the illicit acts for pecuniary gain and not out of fear or because they were subjected to force or violence at the hands of the Defendant.

### III.
### MR. POCEIRO'S HISTORY AND CHARACTERISTICS

**MR. POCEIRO** is a sixty-seven (67) year old man battling multiple serious and chronic health conditions that severely affect his ability to endure a lengthy term of imprisonment. Specifically, he suffers from high blood pressure, type II diabetes, and hyperthyroidism, all of which require continuous medical monitoring, strict dietary compliance, and a complex medication regimen.

As **MR. POCEIRO** ages, these conditions will only worsen, rendering a life sentence tantamount to a sentence of death in custody. Section 3553(a) requires the Court to consider not only punishment and deterrence, but also the individual characteristics of the defendant. A fifteen (15) year sentence would constitute a severe punishment, adequately protect the public, and reflect the seriousness of the offense—without imposing a punishment that exceeds what is necessary to achieve the statutory goals of sentencing.

Further, a fifteen (15) year sentence ensures that **MR. POCEIRO** will not be released from confinement until he is at least eighty (80) years old, when his risk of recidivism will be considerably lower.[1]

### IV.
### CONCLUSION

We respectfully request that the Court vary downward and impose the mandatory minimum sentence of fifteen (15) years.

Respectfully submitted,

**RABIN & LOPEZ, P.A.**
One Southeast Third Avenue
Suite 2600
Miami, FL  33131
Tel:  305•358•1064
Email:  sjr@miamilawyer.com

*s/  Samuel Rabin*

SAMUEL J. RABIN, JR.
Florida Bar № 273831

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of December 2025, a true and correct copy of the foregoing Sentencing Memorandum was furnished via the CM/ECF system to all parties designated to receive the electronic filings in this cause.

*s/  Samuel Rabin*

SAMUEL J. RABIN, JR.

---

[1] *See* The Effects of Aging on Recidivism Among Federal Offenders, https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders (last visited Dec. 17, 2025).